UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN MICHAEL VINCENT,

                           Plaintiff,

                                                                        <u>DECISION AND ORDER</u>

                                                                         08-CV-6570L

            v.

SUPERINTENDENT MR. BRUCE S.YELICH,
et al.,

                           Defendants.
_____

JIMMIE JOHNSON, et al.,

                           Plaintiffs,

            v.                                                          09-CV-6323L

BRIAN FISCHER, in his individual
capacity and his official capacity as Commissioner
of the New York State Department of Correctional Services,
et al.,

                           Defendants.
_____

## **INTRODUCTION**

      Because these two complaints raise identical issues and were argued before the Court on the same day, the cases are consolidated for purpose of this decision.

      The respective plaintiffs, Shawn Michael Vincent, and Jimmie Johnson, Seneca Robinson, Gary St. Mary, Walter Eades, Reginald Johnson, Donald McLean, Jeffrey Palmer, Wayne B. Wright, Jr., Shawn Goodman and David Waddell (collectively "plaintiffs"), bring actions pursuant to 42 U.S.C. §1983 against officers and employees of the New York State Department of Correctional

Services ("DOCS") and New York State Division of Parole (collectively "defendants").[1] Each plaintiff alleges that the defendants, acting individually and in concert, violated his Fifth, Eighth and Fourteenth Amendment constitutional rights in connection with DOCS's administrative imposition of a period of post-release supervision ("PRS"), which followed each plaintiff's service of a judicially-imposed determinate sentence of incarceration.

The defendants now move pursuant to Fed. R. Civ. Proc. 12(b)(1), (3) and (6) to dismiss the plaintiffs' claims, on the grounds that the defendants are, inter alia, entitled to qualified immunity. For the reasons set forth below, the defendants' motions to dismiss (Johnson Dkt. #21, Vincent Dkt. #7, #27)[2] are granted, and the subject complaints are dismissed.

**DISCUSSION**

**I.     Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6)**

In deciding a motion under Fed. R. Civ. Proc. 12(b)(6), a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

---

[1] Plaintiffs' claims are asserted against defendants in their individual capacities. Although both originally asserted official capacity claims, those claims have been withdrawn. (Johnson Dkt. #24 at 1 n. 1, Vincent Dkt. #32 at 1 n.1).

[2] The initial motion to dismiss in the *Vincent* matter (Vincent Dkt. #7) preceded the filing of a second amended complaint.

**II.     Qualified Immunity**

Defendants chiefly urge that plaintiffs' claims must be dismissed, because the defendants are entitled to qualified immunity as a matter of law. The defense of qualified immunity shields public officials from an action for civil damages, to the extent that their challenged acts do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It applies to circumstances in which it is "objectively reasonable" for an official to believe that his conduct did not violate a plaintiff's rights, in light of clearly established law and information known to the official at the time the challenged acts occurred. *See Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995); *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994). In determining whether defendants are entitled to qualified immunity, the Court must focus on "objective circumstances rather than an [official's] subjective motivation." *Bradway v. Gonzales*, 26 F.3d 313, 319 (2d Cir. 1994).

The Supreme Court has identified two key inquiries for evaluating assertions of qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may decide these questions in whatever order is best suited to the case at hand. *Pearson*, 555 U.S. 223 at 236. While the question of whether a violation has occurred is one of law, the issue of whether the relevant right was "clearly established" requires a notably broader inquiry.

The primary issue here is whether the plaintiffs' rights were so clearly established at the time defendants participated in the administrative imposition of a 5-year period of PRS following service of the plaintiffs' determinate sentences, that the defendants should have been aware that their actions violated the plaintiffs' constitutional rights.

In summary, the relevant facts are these. Each of the plaintiffs was sentenced to a determinate sentence following a criminal felony conviction. Notwithstanding the provisions of New York Penal Law §70.45 (commonly known as "Jenna's Law"), which mandated a period of PRS as part of every determinate sentence for the plaintiffs' crimes, the sentencing courts neglected or failed to specify a period of PRS. Each of the plaintiffs was released from incarceration sometime between March 2002 and June 2007. Upon each plaintiff's release, DOCS, construing Penal Law §70.45 as requiring an automatic period of PRS, administratively imposed PRS on each of the plaintiffs. PRS was later revoked for most of the plaintiffs, who subsequently returned to DOCS custody.

It is now clear (in 2011) that both federal and state case law have found that the administrative imposition of PRS to be unconstitutional and unlawful. Defendants claim, though, that at the time that the terms of PRS were added, the law was not well settled.

Plaintiffs claim that at the time PRS was added to the plaintiffs' respective sentences by DOCS officials, the defendants knew or should have known that doing so violated plaintiffs' statutory and constitutional rights.[3] Defendants, on the other hand, contend that defendants should not be held to the present standard but to the standard applicable at the time. Defendants point out that it was not clear that the practice was error and, in fact, several state court cases specifically held that such imposition was not improper.

Initially, the Court revisits the state of the law on this issue as it stood in and before February 2005, by which time PRS had been administratively imposed on nine of the ten plaintiffs. At this point, the unconstitutionality of DOCS' administrative imposition of PRS pursuant to Penal Law §70.45 was far from well settled. To the contrary, in the seven years that had passed since Penal Law §70.45's enactment, New York appellate courts had consistently and uniformly endorsed the

---

[3] Plaintiffs place a special blame on defendant Annucci who is apparently an experienced counsel for DOCS and who allegedly participated in the legislative process that led to the enactment of Penal Law § 70.45.

In summary, the relevant facts are these. Each of the plaintiffs was sentenced to a determinate sentence following a criminal felony conviction. Notwithstanding the provisions of New York Penal Law §70.45 (commonly known as "Jenna's Law"), which mandated a period of PRS as part of every determinate sentence for the plaintiffs' crimes, the sentencing courts neglected or failed to specify a period of PRS. Each of the plaintiffs was released from incarceration sometime between March 2002 and June 2007. Upon each plaintiff's release, DOCS, construing Penal Law §70.45 as requiring an automatic period of PRS, administratively imposed PRS on each of the plaintiffs. PRS was later revoked for most of the plaintiffs, who subsequently returned to DOCS custody.

It is now clear (in 2011) that both federal and state case law have found that the administrative imposition of PRS to be unconstitutional and unlawful. Defendants claim, though, that at the time that the terms of PRS were added, the law was not well settled.

Plaintiffs claim that at the time PRS was added to the plaintiffs' respective sentences by DOCS officials, the defendants knew or should have known that doing so violated plaintiffs' statutory and constitutional rights.[3] Defendants, on the other hand, contend that defendants should not be held to the present standard but to the standard applicable at the time. Defendants point out that it was not clear that the practice was error and, in fact, several state court cases specifically held that such imposition was not improper.

Initially, the Court revisits the state of the law on this issue as it stood in and before February 2005, by which time PRS had been administratively imposed on nine of the ten plaintiffs. At this point, the unconstitutionality of DOCS' administrative imposition of PRS pursuant to Penal Law §70.45 was far from well settled. To the contrary, in the seven years that had passed since Penal Law §70.45's enactment, New York appellate courts had consistently and uniformly endorsed the

---

[3] Plaintiffs place a special blame on defendant Annucci who is apparently an experienced counsel for DOCS and who allegedly participated in the legislative process that led to the enactment of Penal Law § 70.45.

automatic imposition of PRS by DOCS, regardless of whether PRS was ever specifically ordered by the sentencing court. *See e.g.*, *People v. Dale*, 14 A.D.3d 712 (2d Dept. 2005); *Deal v. Goord*, 8 A.D.3d 769 (3d Dept. 2004); *People v. Munck*, 4 A.D.3d 627 (3d Dept. 2004); *People v. Lindsey*, 302 A.D.2d 128 (3d Dept. 2003); *People v Hazen*, 308 A.D.2d 637 (3d Dept. 2003); *People v. Thweatt*, 300 A.D.2d 1100 (4th Dept. 2002).

The issue of whether Penal Law §70.45 created a PRS requirement that could by applied only by sentencing judges, or whether it automatically built a period of PRS into applicable sentences in a manner that DOCS and/or the New York State Division or Parole could lawfully enforce regardless of the sentencing judge's pronouncement, was not addressed at the federal level in this Circuit until June 2006. In the matter of *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), the Second Circuit considered the issue for the first time, and held that a term of PRS was not enforceable unless it had been pronounced by the sentencing judge on the record. *Id.*

Plaintiffs contend that a reasonable official should have taken "fair warning" of this conclusion prior to *Earley*, and that to the extent that defendant Annucci possessed legal training, he should have been able to forecast the sea change by applying lines of cases concerning related topics. 451 F.3d 71. However, I find that the cases upon which plaintiffs rely are not controlling and are factually distinguishable from the situation faced by defendants here. In light of the favorable state case law that existed in New York at the time, I do not believe that a reasonable state official would have been on notice that the administrative imposition of PRS violated plaintiffs' rights. Accordingly, I conclude that defendants are manifestly entitled to qualified immunity for the imposition of PRS prior to the June 2006 *Earley* decision. *Id.*

Whether a reasonable official would have known that the administrative imposition of PRS was unconstitutional after *Earley*, such as in June 2007 when PRS was administratively mandated for plaintiff Jimmie Johnson, is a slightly closer question. However, I reach the same conclusion as to defendants' post-*Earley* conduct.

In assessing whether it was objectively reasonable for an official to believe that administratively imposed PRS passed statutory and constitutional muster even after *Earley*, I note that for two years after the *Earley* federal court case was decided, New York state courts did not always follow its holding. State courts ruled on occasion that DOCS could still administratively mandate periods of PRS pursuant to Jenna's Law, even in the absence of an explicit imposition of PRS by a sentencing judge. In some cases, it was reasoned that *Earley* did not squarely apply to DOCS's practices, because in administratively mandating PRS under Penal Law §70.45, DOCS was "only enforcing, not imposing, a part of petitioner's sentence which was automatically included by statute," and thus was not unlawfully usurping any "judicial function." *Scott v. Fischer*, 2009 U.S. Dist. LEXIS 35027 at *8 (S.D.N.Y. 2009), *quoting Garner v. New York State Dep't of Correctional Servs.*, 39 A.D.3d 1019, 1019 (3d Dept. 2007). *See also People v. Crump*, 302 A.D.2d 901 (4th Dept. 2003). The state law was not uniform. Other state courts had concluded that, in light of *Earley*, "[a]ny alteration to [a determinate] sentence, unless made by a judge in a subsequent proceeding, is of no effect . . . [t]o the extent that our prior decisions have held otherwise . . . they should no longer be followed." *Dreher v. Goord*, 46 A.D.3d 1261, 1262 (3d Dept. 2007). *See also People v. Figueroa*, 45 A.D.3d 297 (1st Dept. 2007); *People v. Noble*, 37 A.D.3d 622 (2d Dept. 2007). Notwithstanding the state-court split, the presumptive constitutionality of Penal Law §70.45 itself, which DOCS was purportedly striving to apply, was not seriously challenged. *See generally Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir. 2005) ("absent contrary direction, state officials . . . are entitled to rely on a presumptively valid state statute . . . until and unless the statute is declared unconstitutional").

In April 2008, the New York Court of Appeals resolved the state conflict of authority in an appeal from *Garner*, 10 N.Y.3d 358 (2008) and in *People v. Sparber*, 10 N.Y.3d 457 (2008) both of which explicitly held that state law barred DOCS from adding a term of PRS onto a defendant's sentence in the absence of a pronouncement for such by the sentencing judge. It is these decisions -- and not *Earley* -- which courts in the Second Circuit have consistently understood to have effected

the change in the law, and established the temporal boundary of qualified immunity for DOCS officials alleged to have administratively imposed PRS.

As the district court for the Southern District of New York recently observed on this very issue:

> [T]he overwhelming consensus within the Second Circuit is that the protection of qualified immunity [in such circumstances] applied until April 2008, when the New York Court of Appeals resolved a split among the lower state courts and invalidated the administrative imposition of PRS. Until then, the courts have uniformly held, it would have been reasonable for Parole and DOC[S] officials not to have understood fully the constitutional problems created by imposition of PRS in such a manner.

*Locantore v. Hunt*, 2011 U.S. Dist. LEXIS 40094 (S.D.N.Y. 2011) (internal citations omitted). *See also Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010); *Rivers v. Fischer*, 390 Fed. Appx. 22 (2d Cir. 2010); *King v. Cuomo*, 2011 U.S. Dist. LEXIS 384 (S.D.N.Y. 2011); *Hardy v. Fischer*, 701 F. Supp. 2d 605 (S.D.N.Y. 2010).

Hindsight is always 20/20. Although the unconstitutionality and/or unlawfulness of defendants' practice of administratively mandating PRS may be clear today, it was manifestly not so prior to April 2008, when New York state appellate courts remained split as to *Earley*'s import and scope, and had identified numerous well-seeming ways to distinguish it. *See Ruffins v. Department of Correctional Servs.*, 701 F. Supp. 2d 385, 406 (E.D.N.Y. 2010) ("after the Second Circuit issued its opinion, some state courts embraced *Earley*, finding that administratively imposed PRS required that prisoners' sentences be amended or prisoners should be resentenced, while other courts followed *Earley* and concluded that the proper remedy was to remove PRS entirely from the prisoner's sentence; still other courts concluded that *Earley* was not binding on New York state courts, and thus, under New York Penal Law, the five-year PRS term was automatically included in certain prisoners' sentences, regardless of whether the PRS term was administratively or judicially imposed").

Because the defendants' actions did not violate any constitutional right that was clearly established at the time of the alleged violations, they are entitled to qualified immunity.

**CONCLUSION**

For the foregoing reasons, I find that the defendants are entitled to qualified immunity against the plaintiffs' claims, and that they are thus entitled to judgment as a matter of law. Defendants' motions to dismiss the complaint (Johnson Dkt. #21, Vincent Dkt. #7,# 27) are granted, and the complaints in both of the above-referenced matters are dismissed in their entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 29, 2011.