UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN MICHAEL VINCENT,

                                          Plaintiff,

                    v.

SUPERINTENDENT BRUCE S. YELICH, et al.,

                                          Defendants.
_____

<u>DECISION AND ORDER</u>

08-CV-6570L

        Plaintiff Shawn Michael Vincent ("Vincent") brings this action pursuant to 42 U.S.C. §1983 ("Section 1983"). He seeks compensation from defendant Anthony J. Annucci, former Counsel and later Executive Deputy Commissioner and Counsel for the New York State Department of Correctional Services ("DOCS"), for Annucci's role in the unconstitutional administrative imposition and enforcement of post release supervision ("PRS") on plaintiff.

        Familiarity with the lengthy factual and procedural history of this matter is presumed. On August 29, 2011, this Court granted a motion by defendants (which then included multiple individuals, including several officials employed by DOCS, the New York State Division of Parole, and Bare Hill Correctional Facility) to dismiss the complaint for failure to state a claim, finding that the defendants were entitled to qualified immunity. *Vincent v. Yelich ("Vincent I")*, 812 F. Supp. 2d 276 (W.D.N.Y. 2011).

        On June 4, 2013, the Second Circuit Court of Appeals reversed that decision in part, insofar as it had dismissed plaintiff's claims against Annucci, finding that "the district courts erred in

ruling that Annucci was entitled to qualified immunity as a matter of law." *Vincent v. Yelich ("Vincent II")*, 718 F.3d 157, 173-74 (2d Cir. 2013).

Plaintiff now moves for summary judgment (Dkt. #51) finding Annucci liable for the violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution to due process and freedom from unlawful imprisonment, and assessing compensatory damages. Annucci has cross moved for summary judgment dismissing the complaint, arguing that he is entitled to qualified immunity, and/or that plaintiff's recovery, if any, should be limited to nominal damages. (Dkt. #54). For the reasons that follow, plaintiff's motion is granted, and defendant's cross motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2001, Vincent pled guilty to violations of New York Penal Law pursuant to a plea agreement promising a sentence of no more than 5 years. On September 17, 2001, Vincent appeared in Chautauqua County Court, where he was sentenced to a term of 5 years imprisonment. The sentence by the County Court did not include any period of PRS. Vincent was thereafter remanded to DOCS custody, with a maximum expiration date of October 4, 2005, or with good time, a conditional release date of January 14, 2005. In fact, Vincent was conditionally released on January 14, 2005, at which point a 5-year period of PRS, set to conclude January 14, 2010, was administratively imposed not by a court but by DOCS.[1]

On October 14, 2005, Vincent was arrested and taken into custody and charged with failure to comply with certain conditions of the terms of PRS. While Vincent was awaiting adjudication of those charges, on June 9, 2006, the Second Circuit Court of Appeals decided *Earley v. Murray*

---

[1] Defendant, in his Statement of Undisputed Facts, disputes the expiration date of Vincent's sentence. However, as defendant offers no alternative date and no proof that plaintiff's statement is incorrect on this point, the Court defers to the date set forth by plaintiff.

("*Earley I*"), 451 F.3d 71 (2d Cir. 2006), ruling that it was unconstitutional for individuals to be subjected to administratively-imposed PRS where no judge had sentenced them to it. It is this decision that is at the heart of Vincent's present action.

On August 29, 2006, an administrative law judge determined that Vincent had violated the conditions of his administratively-imposed PRS. Vincent remained incarcerated until March 21, 2007, when he was released to additional term of PRS administratively imposed by a DOCS official. Two weeks later, on April 5, 2007, Vincent was charged for a second time with failure to comply with PRS conditions, and was again incarcerated, this time with a two-year sentence.

Vincent thereafter filed a *habeas corpus* petition in New York State Supreme Court, Franklin County, alleging that his continued incarceration was unconstitutional. That petition was granted on July 23, 2008, and Vincent was released on July 31, 2008.

As the Second Circuit has observed, Annucci was aware of and understood the holding in *Earley I* at least as early as June 20, 2006 when he purported to explain it to an Office of Court Administration official in an e-mail, but "could reasonably have waited to take action until after August 31, 2006," when the Second Circuit denied rehearing. *Betances v. Fischer* ("*Betances II*"), 837 F.3d 162, 170-72 (2d Cir. 2016) (citing *Earley v. Annucci* (*"Earley II"*), 462 F.3d 147, 148 (2d Cir. 2006)). *See also Earley v. Annucci* (*"Earley III"*), 810 Fed. Appx. 60, 64 (2d Cir. 2020) ("our prior cases have properly placed on Annucci the obligation of beginning efforts to expeditiously implement the holding of *Earley I* as soon as rehearing of that case was denied").

Nonetheless, Annucci "did not take objectively reasonable steps" to conform DOCS policy to *Earley I* and *Earley II* until at least April 2008. *Betances II*, 837 F.3d 162 at 168, 171-72. *See also Reyes v. Fischer*, 2017 U.S. Dist. LEXIS 218777 at *15-*19 (E.D.N.Y. 2017)(describing Annucci's role in formulating DOCS's response to *Earley I*, which included advising DOCS

officials that they were not bound by *Earley I*, and taking no action to conform DOCS policy and conduct to its holding until 2008). As a result, Vincent was incarcerated for 686 days for violating the terms of unconstitutional, administratively-imposed PRS, *after* the Second Circuit's August 31, 2006 decision in *Earley II*, denying rehearing.

## DISCUSSION

### I.     Summary Judgment

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In determining a motion for summary judgment, the Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must construe all inferences in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### II.    Annucci's Liability and Qualified Immunity

In order to state a claim under Section 1983, a plaintiff must allege that a state actor, or a private party acting under color of law, "deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted). In order for a defendant to be held individually liable in an action under Section 1983, the plaintiff must show that the defendant was personally involved in the alleged deprivation. Such involvement can be established through proof that the defendant created a "policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). While an official may be found to be protected

by qualified immunity where the violation concerned a right that was not "clearly established" at the time of the disputed actions, where the official's actions violated clearly established rights of which a reasonable official would have been aware, qualified immunity is unavailable. *Vincent II*, 718 F.3d 157 at 166.

Here, Annucci's personal involvement in formulating DOCS's policies concerning the imposition and enforcement of administratively-imposed PRS is already well-settled. In the matter of *Betances*, a pending class action in which Vincent is also a party, the Second Circuit conclusively determined that Annucci was liable for his personal involvement in creating the policies and customs by which the constitutional violations against Vincent, and other individuals upon whom PRS was administratively imposed or enforced, occurred. *Betances II*, 837 F.3d 162 at 165. *See also Earley III*, 810 Fed. Appx. 60 at 63 ("*Betances* concluded that Annucci unreasonably delayed the development and launch of large-scale initiatives to implement *Earley* across the entire population affected by administratively imposed PRS . . . Annucci immediately understood *Earley I*'s holding but deliberately refused to change DOCS procedures to bring them into compliance")(unpublished decision).

Nor is Annucci entitled to qualified immunity for his post-*Earley II* inaction. As the Second Circuit has determined, the unconstitutionality of DOCS's administrative imposition of PRS was "clearly established" with the Second Circuit's decisions in *Earley I* and *II*, and Annucci was aware of those decisions and their meaning almost immediately after they were issued. *Id*. Nonetheless, Annucci failed and refused to act. Annucci's years-long delay in bringing about constitutional compliance thereafter – a delay that resulted in no action ever being taken to release or resentence Vincent, whose PRS-related incarceration continued through July 31, 2008 and presumably would have lasted even longer had a state court not granted him *habeas corpus* relief – was, as the Second

Circuit Court of Appeals held, "objectively unreasonable." *Betances II*, 837 F.3d 162, 172-73. *See generally Vincent II*, 718 F.3d 157 at 173-74. Annucci had a full and fair opportunity to litigate each of these issues in *Earley* and *Betances* (the latter of which included the instant plaintiff as a party), and the Second Circuit's holdings in those matters are thus controlling here.

For the foregoing reasons, construing all facts in Annucci's favor and granting him every favorable inference, I find that the undisputed facts and controlling case law establish that he is personally liable for his acts and omissions in failing to promptly end or cure the unconstitutional imposition and enforcement of PRS against plaintiff after *Earley II* made it clear that such imposition and enforcement of PRS was unconstitutional, and I further conclude that Annucci is not entitled to qualified immunity for such acts and omissions.

**III.    Compensatory Damages**

Plaintiff has requested an award of compensatory damages in the amount of $1,000,000.00, based solely on his instant submissions. In support of his request, Vincent has submitted a sworn affidavit addressing the length of his incarceration for the PRS violations, as well as the mental anguish that this period of additional incarceration caused him. *See generally Kerman v. City of New York*, 374 F.3d 93, 122-26 (2d Cir. 2004) (discussing factors relevant to an award of compensatory damages for false imprisonment, even where the unlawful detention lasted only a few hours).

Annucci contends that to the extent plaintiff was subjected to administratively-imposed PRS in violation of his constitutional right to due process, such error was harmless and caused no injury. Annucci claims that plaintiff is therefore entitled only to nominal damages. I disagree.

Annucci contends that in and after July 2008, inmates who had been subjected to administratively-imposed PRS were, in many cases, referred to the Court for resentencing so that

PRS could be judicially re-imposed. Annucci argues that even if he had acted more promptly to cure the constitutional violation against Vincent, the outcome would have been the same: Vincent would simply have been referred for resentencing, and the new sentence would have included the same term of PRS, *nunc pro tunc*. Annucci thus asks the Court to follow the holding in *Hassell v. Fischer*, 2016 U.S. Dist. LEXIS 195311 (S.D.N.Y. 2016), *aff'd in part*, 879 F.3d 41 (2d Cir. 2018), in which a plaintiff who challenged the delay in his resentencing was found entitled only to nominal damages, since his post-*Earley* judicial resentencing resulted in the same sentence and the same PRS term that had initially been administratively imposed.

Annucci's contention is without merit and flawed in several respects. Initially, *Hassell* is entirely distinguishable, and Annucci's attempts to apply its holding in cases factually similar to the instant one have, predictably, "found little success." *Santiago v. Cuomo*, 2019 U.S. Dist. LEXIS 230492 at *22 (E.D.N.Y. 2019)(finding that "*Hassell* is an inapt comparison" to cases involving plaintiffs whose terms of incarceration were never retroactively rendered constitutional by resentencing).

Unlike the *Hassell* plaintiff, Vincent was never resentenced, and it would be folly for this Court to engage in baseless speculation as to what another court might have done had resentencing taken place. Indeed, it is entirely possible that resentencing might have resulted in no PRS at all. *See e.g.*, *Betances v. Fischer* ("*Betances III*"), 403 F.Supp.3d 212, 229 (2d Cir. 2019) (denying motion by defendants to limit incarcerated plaintiffs to nominal damages and distinguishing *Hassell*, noting that when many of the *Betances* plaintiffs were referred for resentencing, judges imposed shorter PRS periods than what had been administratively imposed, or declined to impose any PRS at all). *See also Aponte v. Fischer*, 2020 U.S. Dist. LEXIS 69426 at *33-*34 (S.D.N.Y. 2020) (denying motion by defendants to limit plaintiff to nominal damages, and distinguishing

7

*Hassell*, where plaintiff suffered a loss of liberty as a result of unlawful detention); *Santiago*, 2019 U.S. Dist. LEXIS 230491 at *23-*24 (defendants "have not established, because they cannot, that Plaintiff would have been resentenced to a term of PRS *nunc pro tunc* had he been referred for resentencing during the period of their liability"). It is clear that on resentencing, the judge could have imposed a lesser term of PRS or, with the consent of the District Attorney (N.Y. Penal Law 70.85), no PRS term at all.

While what *might* have happened if Vincent had been promptly referred for resentencing will forever remain a mystery, what *did* happen to him is clear and undisputed, and it is those events upon which the Court must focus in assessing an appropriate damages award. Vincent's judicially-imposed determinate sentence and his period of conditional release were wholly concluded prior to the time he was initially taken into custody for violating the terms of the PRS that was administratively imposed. Vincent thereafter served approximately 1,006 days of incarceration for violating the terms of PRS, 768 of which were imposed and/or served *after Earley I* declared administrative imposition of PRS to be unconstitutional, and 686 of which were imposed and/or served after the Second Circuit's decision in *Earley II* deprived Annucci of any excuse to further delay efforts to remedy the constitutional violation. In short, but for Annucci's failure to promptly excise Vincent's PRS or to refer him for curative resentencing after *Earley II*, Vincent might have been spared a significant portion of the 686 days of incarceration he served after August 31, 2006.[2] *See Vincent II*, 718 F.3d 157 at 171-72 (after *Earley I*, "the State was required either to have [persons upon whom PRS had been administratively imposed] resentenced by the court . . .

---

[2] The parties' statements of undisputed facts differ slightly as to the relevant number of days Vincent was incarcerated. The Court has endeavored to reach its own calculations based on the undisputed facts. The record indicates that Vincent served 202 days for PRS violations between September 1, 2006 (the date after the Second Circuit's decision in *Earley II*) and his release on March 21, 2007, and an additional 484 days for PRS violations between April 5, 2007, and his release following the grant of *habeas corpus* relief on July 31, 2008. These two periods add up to 686 days – nearly 23 months.

or to excise the PRS conditions from their records and relieve them off those conditions"). He could have had no term of PRS.

A successful plaintiff in a Section 1983 action is entitled to compensatory damages, where properly pleaded and proved. Damages intended to compensate for a period of imprisonment are generally comprised of two types: those associated with pain, physical injury, mental suffering, etc., and those related to the loss of liberty. In determining damages in the first category, courts generally consider lost wages and other economic damages, in addition to emotional distress, mental anguish, and pain and suffering. In fixing damages intended to compensate for the deprivation of liberty, the Second Circuit has noted that an award of thousands of dollars is appropriate for even short periods of confinement. *See Kerman*, 374 F.3d 93 at 125.

"The case law on damages is limited and the purview of the awards is not formulaic." *Henry v. State of New York*, 2018-032-006 (N.Y. Ct. Cl. March 19, 2018)(slip op.). As such, the determination of damages arising from unconstitutional incarceration "is ordinarily 'left to a [factfinder's] common sense and judgment in light of its common knowledge and experience and with due regard to the evidence presented.'" *Id*. (quoting *Sanabria v. State of New York*, 29 Misc. 3d 988, 995 (N.Y. Ct. Cl. 2010)).

Plaintiff has submitted an affidavit which testifies to the high degree of anger, frustration and depression he experienced during his incarceration for PRS violations (1,015 days total, 686 of which post-dated *Earley II*), due to his belief that PRS had been wrongfully imposed in violation of his plea agreement and his right to due process. (Dkt. #51-2). While Annucci does not meaningfully dispute the facts alleged in Vincent's damages application and plaintiff urges the Court to award damages solely based on his affidavit, the Court concludes that in order to gain a thorough understanding of the facts relevant to the assessment of compensatory damages for

9

plaintiff's loss of liberty, and for the pain and suffering and mental anguish associated with that detention, a damages inquest is appropriate.

Unless the parties can reach an agreement as to the amount of compensatory damages or agree to submit the matter to the Court on the existing filings or otherwise, the Court's courtroom deputy will contact counsel to schedule an inquest on damages.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Dkt. #51) on liability is granted, and defendant's cross motion for summary judgment (Dkt. #54) is denied. The Court will schedule a prompt hearing if necessary to determine an appropriate compensatory damages award.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 15, 2020.